IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| STEPHEN PHILLIP FEASTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:10cv514-WC |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

Plaintiff Stephen Phillip Feaster applied for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*. His application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge (ALJ). Following the hearing, the ALJ issued a decision in which he found Plaintiff not disabled from the alleged onset date of June 15, 2007, through the date of the decision. Tr. 21. The Appeals Council rejected Plaintiff's request for review of the ALJ's decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the Court for review under 42

---

[1]  Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. #5); Def.'s Consent to Jurisdiction (Doc. #6). Based on the Court's review of the record and the briefs of the parties, the Court AFFIRMS the decision of the Commissioner.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next

---

[2]   A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or

---

[3]   *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4]   *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The Court's review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. ADMINISTRATIVE PROCEEDINGS

Plaintiff was forty-eight years old at the time of the hearing before the ALJ. Tr. 26. Plaintiff completed the twelfth grade. Tr. 26. Plaintiff's past relevant work experience was as a security guard. Tr. 20.[5] Following the administrative hearing, and employing the five-step process, the ALJ found Plaintiff "has not engaged in substantial gainful activity since June 15, 2007" (Step 1). Tr. 15. At Step 2, the ALJ found that Plaintiff suffers from the following severe impairments: "history of left hip replacement with arthralgia but otherwise uncomplicated recovery; chronic degenerative arthritis cervical spine with multiple disc protrusions; cervical spondylosis; congenitally narrow spinal canal; sleep disorder; hypertension; limited vision; anemia; mixed conductive and sensor neural hearing loss; and a history of alcohol and tobacco abuse." Tr. 15. The ALJ then found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments . . ." (Step 3) Tr. 16. Next, the ALJ found that Plaintiff "has the residual functional capacity to perform light work . . . except the claimant must be allowed a sit/stand option, at will, throughout the course of an eight hour workday. The claimant is authorized to use a cane to ambulate as necessary. The claimant will experience intermittent and moderate pain." Tr. 16. The ALJ then found that Plaintiff "can perform his past relevant

---

[5] While the ALJ found that Plaintiff "can perform his past relevant work as a security guard," Tr. 20, he also curiously found that "[t]ransferability of job skills is not an issue because the claimant does not have past relevant work." Tr. 21. The vocational expert also identified other occupations as previously performed by Plaintiff, including "hospital cleaner," "road truck driver," and "kitchen helper." Tr. 40. In addition, Plaintiff also served in the armed forces immediately prior to the onset of his alleged disability. Tr. 27.

work as a security guard" (Step 4). Tr. 20. While this finding ordinarily would conclude the ALJ's inquiry, the ALJ nevertheless proceeded to find that "[c]onsidering the claimant's age, education, work experience, and [RFC]," and after consulting with a vocational expert, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." Tr. 21. The ALJ identified the following representative occupations as examples: "ticket seller," "office helper," and "garment seller." Tr. 21; *see also id.* at 43-44. Accordingly, the ALJ determined that Plaintiff "has not been under a disability . . . from June 15, 2007 through the date of this decision." Tr. 21.

## IV. PLAINTIFF'S CLAIMS

Plaintiff presents the following issues for this Court's consideration in determining whether the ALJ's decision is supported by substantial evidence: (1) whether the ALJ "failed to properly articulate and apply the three part pain standard[;]" (2) whether the ALJ erred "in concluding that the claimant was capable of returning to a past job which was performed greater than fifteen years prior to the date of the decision[;]" and (3) whether the ALJ erred by "relying on vocational expert testimony which conflicts with the Dictionary of Occupational Titles, and this conflict was not properly resolved or explained in the decision." Pl.'s Brief (Doc. #11) at 3.

## V. DISCUSSION

### A. The ALJ's application of the "pain standard."

Plaintiff claims "the ALJ failed to properly articulate and apply the three part pain

6

standard." Pl.'s Brief (Doc. #11) at 4. He argues that, when the standard is properly applied in this case, "a finding of disability should prevail because Mr. Feastor [sic] has presented objective medical evidence which demonstrates his medically determinable cervical spine and hip impairments and confirms the severity of the alleged pain." *Id.* After reviewing Plaintiff's testimony and some of the medical evidence in the record, Plaintiff concludes that, "[b]ecause Mr. Feaster testified that he experiences neck pain to a disabling degree, and these allegations find support by objective medical findings, he has satisfied the Eleventh Circuit's pain standard and should have been granted benefits." *Id.* at 8. Defendant contends that the ALJ properly articulated and applied the standard which governs the ALJ's consideration of a claimant's subjective testimony about pain, and that the ALJ's reasons supporting his decision to find Plaintiff's testimony less than fully credible are supported by substantial evidence. Def.'s Brief (Doc. #12) at 8-9.

The Court of Appeals for the Eleventh Circuit has articulated its "pain standard," governing the evaluation of a claimant's subjective testimony about pain, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). The ALJ evaluates the "claimant's subjective testimony of pain" only after the claimant satisfies the first and one

7

of the alternate portions of the second prong of the pain standard. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Eleventh Circuit has also held that, "in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence." *Id.* at 1561. Importantly, it is only evidence of the underlying condition which could reasonably be expected to cause pain, not evidence of actual pain or its severity, which must be presented by the claimant to satisfy the "pain standard." *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991); *see also Foster v. Heckler*, 780 F.2d 1125, 1129 (4th Cir. 1986); *Hill v. Barnhart*, 440 F. Supp. 2d 1269, 1272-73 (N.D. Al. 2006) (quoting *Elam*, 927 F.2d at 1215). Where the ALJ proceeds to consider the claimant's subjective testimony about pain, the ALJ's decision to reject or discredit such testimony is reviewed for substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). Finally, if the ALJ determines to discredit subjective pain testimony and such testimony is crucial to the claimant's assertion of disability, the ALJ "must articulate specific reasons for questioning the claimant's credibility." *Id.*

At the hearing before the ALJ, the claimant testified extensively about his pain. When asked why he cannot work, Plaintiff explained that pain in his neck affects his ability to sit up and requires him to massage the area, ingest pain medication, and lay down to alleviate the pain. Tr. 28-29. He also testified that "prolonged walking aggravates" his neck. Tr. 29. Plaintiff also testified that his hip bothers him in that it is stiff in the morning but experiences both sharp and dull pains throughout the day. Tr. 29. He also testified that his hip pain limits

his ability to walk. Tr. 29-30. Under questioning by his attorney, Plaintiff testified that, on a scale of one to ten, Plaintiff's pain on average, with the aid of medication, is at a six or seven. Tr. 31-32. Plaintiff further testified that actions such as bending and holding his head "in a certain way" to facilitate reading aggravate his pain. Tr. 32. Plaintiff testified that lying down in bed is the best means of alleviating his pain, and that he spends four or five hours a day lying down for that purpose. Tr. 32.

In this case, the ALJ properly stated the standards governing his evaluation of Plaintiff's subjective pain testimony and cited to 20 C.F.R. § 404.1529, *see* Tr. 17, "which contains the same language regarding the subjective pain testimony that [the Eleventh Circuit] interpreted when initially establishing its three-part pain standard." *Wilson*, 284 F.3d at 1225. Based upon his review of the record and Plaintiff's testimony, the ALJ determined that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the RFC articulated by the ALJ. Tr. 17. Thus, the ALJ found that Plaintiff passed through the threshold of the "pain standard," but that his testimony about pain was not fully credible. Accordingly, the ALJ was required to "articulate specific reasons for questioning the claimant's credibility[,]" and those reasons must be supported by substantial evidence.

The ALJ's given reasons for his decision to discredit Plaintiff's subjective pain

9

testimony appear to be that such testimony is inconsistent with the objective medical evidence, Plaintiff's treatment, and Plaintiff's own representations during the course of his treatment. Tr. 17-20. In particular, the ALJ relied on Plaintiff's November 2, 2007, statement, after hip surgery, that "he has had significant improvement" to his pre-operative pain level (Tr. 234), and the largely unremarkable findings during a corresponding physical examination which included the examiner's prescription of aggressive physical therapy (Tr. 235). The ALJ reasoned that "the physical examination coupled with the physician's order of aggressive physical therapy suggests that five months after the claimant's surgery (and the alleged onset date) the claimant was experiencing significant improvement. He did not suffer pain, or limitation, to the extent he currently alleges." Tr. 18. The ALJ also found that claimant's failure to report limitations to his ability to sit, stand, or walk during a December 2, 2007, orthopedic visit (*see* Tr. 276), and the examining physician's release of Plaintiff "w/o limitations" (Tr. 277) further diminishes the credibility of Plaintiff's testimony. Tr. 18 ("I find that the examination and disposition reflect negatively on the credibility of claimant's allegations."). The ALJ also found that Plaintiff's reports to military clinic personnel in April of 2008 are inconsistent with his testimony of disabling pain. Tr. 18. In particular, on April 9, 2008, Plaintiff reported that he was "doing well" with his hip recovery, Tr. 437, and that his pain level on April 11, 2008, was "5/10" (Tr. 433). The ALJ also noted Plaintiff's report, on October 21, 2008, that, while his pain was currently at a level of seven, it had dipped as low as three in the last month. Tr. 538. For the ALJ, this variance was a "contradiction to his testimony regarding constant pain above level '6'." Tr. 18. The ALJ

10

further noted that at this examination, Plaintiff had a steady gait and ambulated "without problems," Tr. 544, and was ultimately "cleared for mild exercise - which of course is consistent with light work." Tr. 18.

In addition to medical records which appear to contradict Plaintiff's allegations of disabling pain, the ALJ also relied upon opinion evidence, including the Physical Residual Functional Capacity examination of Dr. Spoor, who determined that Plaintiff can perform light work. Tr. 415. The ALJ also placed great reliance on the opinion of the medical expert who testified at the hearing, Dr. Anderson. Based upon his review of the medical evidence, Dr. Anderson opined that Plaintiff could perform light work, and that he suffers from "intermittent moderate pain syndrome." Tr. 37.

In sum, the ALJ determined that the objective medical evidence, including evidence which reflects Plaintiff's own assertions about his pain when seeking treatment, as well as the credible opinion evidence in the record demonstrates that Plaintiff's allegations of disabling pain are not fully credible. Plaintiff's argument that the ALJ erred in applying the pain standard appears to be grounded in a mistaken belief that the ALJ did not find either that Plaintiff has underlying "medical impairments" or that such impairments could reasonably be expected to cause pain of the sort about which he complains. *See* Pl.'s Brief (Doc. #11) at 4-8. However, as noted above, the ALJ clearly cited to appropriate regulations containing the equivalent of the "pain standard" and found that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms[.]" Tr. 17.

Plaintiff also contends that the objective evidence of Plaintiff's impairments "confirms the severity of the alleged pain in this case." Pl.'s Brief (Doc. #11) at 7. However, it is difficult to imagine how the objective medical evidence cited by Plaintiff, evidence which consists of MRI results (Tr. 523) and a diagnosis of spondylosis (Tr. 276), could also confirm the veracity of Plaintiff's subjective complaints. At most this evidence suggests, as the ALJ found, that Plaintiff's impairments could reasonably be expected to cause the pain about which he complains. Moreover, Plaintiff does not address the numerous bases given by the ALJ for his decision to find Plaintiff's testimony less than fully credible. In essence, therefore, it appears Plaintiff believes the ALJ erred because he did not use the term "pain standard" and, beyond that, he simply misapprehends the ALJ's opinion. Of course, there is no requirement that the ALJ specifically cite to or mention the pain standard, as long as it is evident that he applied the standard. *Wilson*, 284 F.3d at 1225-26. For the reasons given above, it is clear that the ALJ properly applied the pain standard in this case. Furthermore, for the reasons given above, the ALJ articulated sufficient reasons for his decision finding Plaintiff's subjective pain testimony less than fully credible, and those reasons are supported by substantial evidence. Accordingly, Plaintiff's claim that the ALJ erred in articulating and applying the pain standard is without merit.

**B.     The ALJ's finding that Plaintiff may return to past relevant work.**

Plaintiff claims "the ALJ committed reversible error at Step Four of the Sequential Evaluation Process in concluding that the claimant was capable of returning to a past job

12

which was performed greater than fifteen years prior to the date of the decision." Pl.'s Brief (Doc. #11) at 9. Plaintiff asserts "the ALJ has offered no suffered [sic] substantial evidence to rebut the presumption of inapplicability of a job beyond the 15 year period." *Id.* at 10. Defendant maintains that the ALJ complied with agency regulations in finding that Plaintiff can perform his past relevant work as a security guard, and that any error committed by the ALJ was harmless because, despite the ALJ's Step Four finding, the ALJ proceeded to a Step Five analysis and determined "that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform." Def.'s Brief (Doc. #12) at 12.

In considering whether a claimant's past work may constitute relevant work experience in the disability determination process, regulations instruct that the agency will "consider that your work experience applies when it was done within the last 15 years . . . . We do not usually consider that work you did 15 years or more before the time we are deciding whether you are disabled . . . applies. A gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills and abilities acquired in a job done then continue to apply. The 15-year guide is intended to insure that remote work experience is not currently applied." 20 C.F.R. § 404.1565(a). The Eleventh Circuit has held that "the fifteen year limitation described by the regulations does not create a prohibition against considering work outside that period. Rather, our circuit has held that the limitation merely creates a 'presumption of inapplicability' of skills and abilities acquired in work performed outside the fifteen year period." *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

*See also Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 952 (11th Cir. 2010) ("The 15-year time-frame is advisory in nature, and its purpose is to ensure that the ALJ does not use an outdated job description in his determination of whether the claimant can perform her past relevant work.").

In this case, the ALJ determined that Plaintiff can perform his past relevant work as a security guard. Tr. 20. The ALJ remarked that "[a]lthough this job was performed less than 15 years before his alleged onset date but greater than 15 years before now, 20 C.F.R. 404.1565 indicates that we 'usually' do not consider work performed over 15 years ago to be relevant because the skills and abilities required for 'most' jobs have changed very drastically over the period of time. The term 'usually' clearly indicates that there are exceptions. The requirements of the job of security guard, for example, have not changed appreciably and the vocational expert testified that he can perform that job, his past relevant work." Tr. 20. Plaintiff contends that "the ALJ has offered no suffered substantial evidence to rebut the presumption of inapplicability of a job beyond the 15 year period. Indeed, the ALJ elicited no vocational expert testimony regarding whether the skills and abilities required to perform the job of security guard have changed appreciably over time, and he cited to no other source which would support his conclusion." Pl.'s Brief (Doc. #11) at 10-11.

The "presumption of inapplicability" exists solely as a means of insuring that too remote work experience is not considered to Plaintiff's detriment where the requirements of

14

the previous work experience may have changed in the intervening fifteen years. *Waldrop*, 379 F. App'x at 952. The ALJ may consult a vocational expert "in determining whether the claimant still possesses the ability to perform her past relevant work." *Id.* Furthermore, "the claimant bears the burden of showing that her past relevant work experience is not past relevant work." *Id.* at 953. Here, the ALJ queried the vocational expert about whether a hypothetical person with the functional restrictions reflected in various evaluations in the record would be able to perform Plaintiff's past relevant work. The vocational expert testified that he would be able to perform the work of a security guard, but not the other occupations she had identified as prior work, including "hospital cleaner," "road truck driver," and "kitchen helper." Tr. 41-43. Plaintiff's attorney did not question the vocational expert about "whether the skills and abilities required to perform the job of security guard have changed appreciably over time," Pl.'s Brief (Doc. #11) at 11, and Plaintiff has not presented any evidence of such change in his brief to this Court.

Given that there is no absolute prohibition against considering work from outside the fifteen-year period, in relying merely on the fact that his security guard job fell beyond that period, Plaintiff has failed to meet his burden of proving that his work as a security guard does not constitute past relevant work. Because the vocational expert testified that Plaintiff could perform the job of security guard "as it is performed in the general economy," any error the ALJ may have committed "by failing to ask additional questions about the physical demands posed by [Plaintiff's] past work as a [security guard] . . . did not prejudice"

15

Plaintiff. *Waldrop*, 379 F. App'x at 953. The Court further finds that, in proceeding beyond the past relevant work inquiry to determine whether, given Plaintiff's age, education, and RFC, there exist jobs in significant numbers in the national economy which he can perform, the ALJ has rendered harmless any error he could have committed in finding that Plaintiff's job as a security guard constitutes past relevant work which he can perform. *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (finding error in ALJ's consideration of "any job held more than 15 years ago" harmless). Accordingly, Plaintiff's claim that the ALJ reversibly erred in his findings about Plaintiff's past relevant work is without merit.

### C.   The ALJ's reliance on vocational expert testimony.

Plaintiff claims the ALJ "relied upon vocational expert testimony which conflicts with the Dictionary of Occupational Titles ("DOT"), and this conflict was not properly resolved or explained in the decision . . . ." Pl.'s Brief (Doc. #11) at 11. Plaintiff asserts that, "although a conflict between the VE's testimony and the DOT was brought to the ALJ's attention, no **reasonable** explanation was elicited." *Id.* at 13 (emphasis in original). Defendant maintains that the ALJ fully complied with applicable regulations and SSR rulings because the vocational expert based her testimony on her real world experience and properly identified to the ALJ any inconsistency between her testimony and the DOT.

At the hearing, the ALJ asked the vocational expert whether her testimony was "in accordance with the [DOT]." Tr. 44. The vocational expert responded that her testimony was consistent with the DOT "with the one exception of my information provided regarding

16

the sit/stand option." Tr. 44. The vocational expert confirmed that, while the sit/stand option is not provided for in the DOT, in her real world experience, she is aware that the option exists with respect to the occupations she identified. Tr. 44-45. Plaintiff's attorney did not challenge the vocational expert's testimony about the purported conflict or her observations about sit/stand options in "real world" employment settings. Tr. 45.

As Plaintiff and Defendant indicate, SSR 00-4p requires the ALJ to identify and explain conflicts arising between a vocational expert's testimony and the DOT. However, at least one appellate court has recently determined that, because the DOT does not address the sit/stand option, "it is not apparent" that a vocational expert's testimony about that subject presents any conflict with the DOT. *Zblweski v. Astrue*, 302 F. App'x 488, 494 (7th Cir. 2008). *See also Manners v. S.S.A.*, 2011 WL 820653 at *8 (M.D. Tenn. March 2, 2011). In other words, numerous courts have concluded that, because the DOT does not "recommend differently," it is not apparent that a conflict exists between a given DOT job description and a vocational expert's testimony that, based on his or her professional opinion, such job may be performed with a sit-stand option in the economy. *Traxler v. Astrue*, 2010 WL 1257544 at *6 (D. S.C. Feb. 1, 2010). Thus, it is not even apparent that there is a conflict between the DOT and the vocational expert's testimony that was required to be resolved by the ALJ.

Nevertheless, even assuming such a conflict, the ALJ adequately ascertained a reasonable basis for resolving any such conflict in this case. Social Security Ruling 00-4p instructs that "[n]either the DOT nor the VE . . . evidence automatically 'trumps' when there

17

is a conflict[,]" and that in the event of such a conflict "the adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information." SSR00-4p, 2000 WL 1898704 at *2. Social Security Ruling 00-4p provides, as an example of a reasonable explanation for a conflict, the instance where "[i]nformation about a particular job's requirements" comes from another source such as "a VE's . . . experience in job placement or career counseling." *Id.* In other words, a vocational expert "or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT." *Id.* Again, in this instance, the ALJ elicited unchallenged testimony from the vocational expert that the jobs she had identified, in her experience, permit a sit-stand option. Tr. 44-45. This is precisely one example of the sort of reasonable explanation for the purported "conflict" contemplated by SSR 00-4p. Because the ALJ properly ascertained a reasonable explanation for any difference between the vocational expert's testimony and the DOT, he was justified in relying on the VE's testimony despite any purported conflict with the DOT. Plaintiff's claim that the ALJ erred in this respect is without merit.

## VI. CONCLUSION

The Court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is supported by substantial evidence and is AFFIRMED. A separate judgment will issue.

DONE this 24th day of May, 2011.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE